UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH R. SHAW,

            Plaintiff,

vs.                                Case No.   2:02-cv-500-FtM-33SPC

DR. ROBERT BRIODY and MR. BENJAMIN
BROOKS,

            Defendants.
_____

## ORDER

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #116). The Plaintiff has filed a response (Doc. #117). For the reasons stated herein, the Court grants the Motion to Dismiss.

### I. Background

At the filing of this complaint, Shaw was a detainee at the Florida Civil Commitment Center (FCCC). The FCCC is a state funded entity created by the Jimmy Ryce Act. The FCCC's purpose is to civilly detain certain convicts after their release from prison. The FCCC detainees share at least one characteristic: all were convicted of a sex crime. Through the Jimmy Ryce Act, the legislature created the FCCC to protect the public from these individuals.

Prior to commitment to the FCCC, a judge must hold a hearing to determine whether the individual qualifies for civil confinement. Before the hearing and after release from prison,

individuals are detained at the center to await their hearing. Shaw was in this state of limbo at the time of the alleged infractions.

While in limbo, Liberty Behavioral Health Corporation (Liberty) -the corporation under contract with the state to run the FCCC- hired Shaw as a silver roller. (Doc. #113 at ¶6). In return for his services, Liberty paid Shaw an hourly rate less then the federal minimum wage mandated by the Fair Labor Standards Act (FLSA). (Doc. #113 at ¶5). In his complaint, Shaw argues that the downward deviation entitles him to relief pursuant to 42 U.S.C. § 1983. (Doc. #113 at ¶1). Although unclear from Shaw's complaint, Shaw also appears to bring a pendent contracts claim. (Doc. #113 at ¶¶1,7) Further, Shaw cites the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151 et. seq., as a source of jurisdiction. (Doc. #113 at ¶1). Specifically, Shaw cites to 29 U.S.C. § 160. (Doc. #113 at ¶1). He does not, however, explicitly bring a claim pursuant to 29 U.S.C. § 160. Understanding the *pro se* nature of the complaint, the Court will construe the complaint as bringing a claim pursuant to 29 U.S.C. § 160. Thus, the Court reads the complaint to plead three claims: 42 U.S.C. § 1983, 29 U.S.C. § 160, and pendent contracts claims.

Countering these claims, Liberty argues that Shaw's § 1983 claim must fail since Shaw does not allege a constitutional

violation. (Doc. #116 at ¶4). In addition, Liberty frames Shaw's complaint as alleging a cause of action pursuant to FLSA, 29 U.S.C. §§ 201 et. seq. (Doc. #116 at ¶4)-though Shaw did not include this as count. So framing, Liberty argues that FLSA is inapplicable to Shaw.

## II. Standard

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiffs. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc).

To satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). The Court

need not accept unsupported conclusions of law or of mixed law and fact in a complaint. Marsh, 268 F.3d at 1036 n.16.

### III. § 1983 Claim

In addressing the availability of § 1983 to remedy a statutory or constitutional violation, the Court must engage in a two part analysis: (1) first, the Court must find that Plaintiff asserted a violation of a federal right and (2) after such showing, the Court must then determine whether Congress foreclosed a § 1983 remedy through a "comprehensive enforcement mechanism for protection of a federal right." Smith v. Robinson, 468 U.S. 992, 1003 (1984).

Since the Plaintiff is proceeding *pro se*, the Court will liberally construe Shaw's complaint in engaging in its § 1983 analysis. Despite this liberal construction, after reviewing the NLRA and the FLSA, the Court is unable to find a violation of a federal right capable of sustaining a § 1983 action.

*A. NLRA*

Analyzing the NLRA, the Court first examines 29 U.S.C. § 160 -the NLRA section specifically cited in the complaint. Upon examining § 160, it becomes apparent that § 160 is not applicable to Shaw's case. Shaw's complaint is riddled with allegations of Liberty's failure to pay the federally mandated minimum wage. In fact, beyond Shaw's contract claims, Liberty's failure to pay the minimum wage forms the entire basis of Shaw's complaint. Despite

this, § 160 does not touch on the federally mandated minimum wage.

Again, understanding the *pro se* nature of the complaint, the Court examines the NLRA in its entirety in an effort to identify an applicable statute within the act capable of forming the basis of Shaw's § 1983 claim. However, this search proves fruitless. After researching the issue further and based on the facts as posed in Shaw's complaint, the Court finds that no provision of the NLRA forms the basis of Shaw's § 1983 claim.

In reaching this conclusion, the Court references the NLRA's purpose:

> The history of the Act and its language show that its ruling purpose was to protect interstate commerce by securing to employees the rights established by § 7 to organize, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for that and other purposes. *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 23, 33. This appears both from the formal declaration of policy in § 1 of the Act, *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, supra, 22-24, and from § 7, in itself a declaration of the policy which, in conjunction with § 10 (c), it adopts as the controlling guide to administrative action.

NLRB v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 265-66 (1938). After referencing this opinion, it is clear that the legislature's purpose in acting the NLRA was to regulate organized labor. As Shaw's complaint does not allege any facts touching on or stemming from collective bargaining, the Court finds that Shaw's

claim has no basis in the NLRA. As such, Shaw will be unable to use an NLRA violation as a basis for his § 1983 claim.

B. *FLSA*

Although Shaw did not explicitly plead a FLSA claim, the thrust of Shaw's complaint centers on Liberty's failure to pay the federal mandated minimum wage -a claim stemming from FLSA; specifically, 29 U.S.C. § 206(1)(a). As such, the Court analyzes the viability of a FLSA claim. Based on this analysis, the Court finds that Shaw fails to state a valid FLSA claim.

Reaching this conclusion, the Court finds that FLSA is inapplicable to individuals in Shaw's position -civil detainees housed at the FCCC. The Court is unable to discover any Eleventh Circuit case law directly on point. The most analogous Eleventh Circuit precedent is found in Villarreal v. Woodham, 113 F.3d 202 (11th Cir. 1997). In Villarreal, the Court addressed the applicability of FLSA's minimum wage requirement to pretrial detainees. See generally id. The Villarreal court held that FLSA was inapplicable to these detainees. In reaching its conclusion, the Villarreal court applied a modified economic reality test - a broader approach then the economic reality test created in Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983).[1] Under this broadened approach, the court analyzed the

---

[1] In Villarreal, the court explicitly adopted this broader approach. Villarreal, 113 F.3d at 206. Following the guidance of
(continued...)

economic reality under the backdrop of an inmate-jailer context and reasoned:

> Focusing on the economic reality of the situation in its entirety, we conclude that Villarreal is not an "employee" under the FLSA. The purpose of the FLSA is to protect the standard of living and general well-being of the American worker. Because the correctional facility meets Villarreal's needs, his "standard of living" is protected. In sum, "the more indicia of traditional, free-market employment the relationship between the prisoner and his putative 'employer' bears, the more likely it is that the FLSA will govern the employment relationship." Henthorn [v. Dept. of Navy], 29 F.3d [682], 686 [(D.C. Cir. 1994)]. Villarreal's situation does not bear any indicia of traditional free-market employment contemplated under the FLSA. Accordingly, we hold that Villarreal and other pretrial detainees in similar circumstances are not entitled to the protection of the FLSA minimum wage requirement.

Id. at 207. Following the Villarreal court's reasoning, the Court finds that similar rationales apply to the civil detainee/detainor relationship. Admittedly, the Court recognizes differences between the inmate/jailer and the civil detainee/detainor relationships. The most apparent difference is the non-punitive nature of civil confinement. See Kansas v. Hendricks, 521 U.S. 346, 363 (1997) (recognizing the non-punitive

---

[1](...continued)
sister circuits, the Villarreal court found that the Bonnette court's economic reality test does not apply in an inmate-jailer situation. In accepting the broader economic reality approach, the Villareal court also adopted the reasoning justifying its application -that FLSA presupposes a free-labor situation, which does not exist in a inmate-jailer context. Under the broader approach -applied in inmate/jailer situations- courts examine the economic reality of the entire situation rather then just analyzing the employment relationship.

nature of civil confinement). However, despite these differences, the Court also recognizes similarities between the two forms of confinement. As applied to this situation, the most relevant similarity is the standard of living provided each detainee. During both civil and criminal confinement, the detainee's standard of living is protected. Recognizing this similarity, the Court sees no reason not to apply the <u>Villarreal</u> court's reasoning to a civil detainee/detainor context. Accordingly, the Court finds that the FLSA does not apply to Shaw; thus, even if Shaw had properly pled a FLSA claim, such claim would not survive a 12(b)(6) motion.

Further, since the Court finds that FLSA is inapplicable to Shaw, Shaw cannot use a FLSA claim as the basis for his § 1983 action. Moreover, even if Shaw's FLSA claim did survive, the court must still engage in the second prong of its § 1983 analysis: determining whether Congress foreclosed a § 1983 remedy through a comprehensive enforcement mechanism for protection of a federal right.

Analyzing, the Court finds that Shaw's FLSA claim fails this second prong. Although the Eleventh Circuit has not spoken on this issue, courts in at least two other circuits have found that FLSA's elaborate enforcement scheme evidences Congress' intent to preclude resort to § 1983 for the protection of rights secured by FLSA. <u>Stone v. McGowan</u>, 308 F.Supp.2d 79, 87-88 (N.D.N.Y.

2004)(citing <u>Kendall v. City of Chesapeake, Virginia</u>, 174 F.3d 437, 443 (4th Cir. 1999)).  Accordingly, even if Shaw's FLSA claim did survive a 12(b)(6) motion, it could not form the basis of his § 1983 claim.  Thus, since Shaw does not allege any other basis -constitutional or statutory- for his § 1983 claim, Shaw fails to state a valid § 1983 claim.

### IV. Pendent State Law Claims

In addition to his other claims, Shaw also alleges pendent state contractual violations.  Pursuant to § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction."  Here, the Court is dismissing all claims over which it has original jurisdiction.  Thus, in its discretion, the Court declines to exercise jurisdiction over Shaw's pendent contractual claims.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #116) is **GRANTED**.  Plaintiff's complaint (Doc. #113) is dismissed without prejudice.

**DONE** and **ORDERED** in Chambers in Fort Myers, Florida, this <u>20th</u> day of September, 2005.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Parties of Record